UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SONIA AMADOR,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>KILOLO KIJAKAZI,<br>COMMISSIONER OF SOCIAL<br>SECURITY,[1]<br><br>　　　　Defendant. | Case No.  1:19-cv-01653-HBK<br><br>OPINION AND ORDER AFFIRMING THE COMMISSIONER [2]<br><br>(Doc. No.  18) |

Sonia Amador ("Plaintiff"), seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for supplemental security income under the Social Security Act. (Doc. No. 1). The matter is currently before the Court on the parties' briefs, which were submitted without oral argument. (Doc. Nos. 18-20). For the reasons stated, the Court affirms the Commissioner's decision.

**I.　　JURISDICTION**

Plaintiff protectively filed for supplemental security income on December 14, 2016,

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit. No further action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

[2] Both parties have consented to the jurisdiction of a magistrate judge, in accordance with 28 U.S.C. §636(c)(1). (Doc. Nos. 7, 8).

alleging an onset date of December 1, 2015.  (AR 194-200).  Benefits were denied initially (AR 129-32) and upon reconsideration (AR 139-143).  Plaintiff appeared for a hearing before an administrative law judge ("ALJ") on May 25, 2018.  (AR 47-105).  Plaintiff testified at the hearing and was not represented by counsel.  (*Id*.).  The ALJ denied benefits (AR 15-33) and the Appeals Council denied review (AR 6-10).  The matter is now before this court pursuant to 42 U.S.C. § 1383(c)(3).

## II.    BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and Commissioner.  Only the most pertinent facts are summarized here.

Plaintiff was 50 years old at the time of the hearing.  (*See* AR 67).  She testified that she completed tenth grade.  (AR 68).  Plaintiff was homeless at the time of the hearing.  (AR 69).  She has work history as a floral designer and a sandwich maker.  (AR 72-73, 88-89, 93).  Plaintiff testified that she has pain in her neck, back, and knees; there is "something wrong in [her] joints" that is worse in her left shoulder than her right shoulder; and she gets "unexplainable" fatigue.  (AR 76-77, 97-98).  She has back and hip pain when she sweeps, mops, and bends over.  (AR 78).  Plaintiff reported that she experiences "stress" in large crowds, and when her pain starts her stress "goes up" she "can't think straight."  (AR 83, 87, 89).

## III.    STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.

*Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id*. An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## IV. FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's

impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five. At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such

work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## V. ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since December 14, 2016, the application date. (AR 20). At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease of the cervical spine and mild degenerative changes to the lumbar spine. (AR 20). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (AR 23). The ALJ then found that Plaintiff has the RFC to perform a full range of medium work as defined in 20 CFR 416.967(c). (AR 23). At step four, the ALJ found that Plaintiff has no past relevant work. (AR 27). At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (AR 28). On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since December 14, 2016, the date the application was filed. (AR 28).

## VI. ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act. (Doc. No. 1). Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly weighed the medical opinion evidence; and
2. Whether the ALJ erred at step two.

(Doc. No. 18 at 8-14).

## VII. DISCUSSION

### A. Medical Opinions

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201–02 (9th

Cir. 2001) (citations omitted).  Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's.  *Id*.  If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  Conversely, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id*. (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)).  "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (9th Cir. 2009) (quotation and citation omitted).

### 1. Daniel Watrous, M.D.

In March 2018, Dr. Daniel Watrous, Plaintiff's treating physician, noted diagnoses of osteoarthritis with degenerative disc disease of the lumbar spine and fibromyalgia.  (AR 609).  He opined that Plaintiff could stand for 1 hour, sit for 2-4 hours, walk a quarter to a half mile without stopping, and regularly lift and carry 5-10 pounds.  (AR 610-11).  The ALJ gave Dr. Watrous' opinion little weight for several reasons.

First, the ALJ noted that the extreme limitations noted by Dr. Watrous were not supported by Plaintiff's subjective allegations of pain as documented in Dr. Watrous' own treatment records.  (AR 26).  The ALJ may properly reject a medical opinion if it is inconsistent with the provider's own treatment notes.  *Tommasetti*, 533 F.3d at 1041.  Plaintiff argues this finding "is a mischaracterization of the record," and cites her report to Dr. Watrous in February 2018 that her pain level was at a 4, her stiffness was at an 8, and her fatigue, difficulty sleeping, difficulty with activity, and difficulty walking were at a 9; her report the next week that she "feels much worse" and was limping; her report in March 2018 of increased pain; and her report in April 2018 that she was feeling worse since her last visit.  (Doc. No. 18 at 9-10 (citing AR 750, 761, 772, 780)). However, as noted by Defendant, the ALJ cited treatment notes from Dr. Watrous indicating that Plaintiff regularly rated her pain at 3 or 4 out of 10, and "repeatedly reported to Dr. Watrous that

6

her pain was adequately controlled with pain medications."³ (Doc. No. 19 at 10 (citing AR 750, 755, 758, 761-62, 769, 775).  The Court's review of these records also indicates that findings upon examination at the same treatment visits cited by Plaintiff included mild to moderate tenderness, no swelling, no effusion, and no loss of motion in the neck and lower back.  (AR 762 (reporting adequate control of pain with medication), 773, 781).  Thus, it was reasonable for the ALJ to find the severity of the limitations assessed by Dr. Watrous was inconsistent with Plaintiff's subjective reports as documented in Dr. Watrous' own treatment notes.

Second, the ALJ found Dr. Watrous' opinion is not "supported by the imaging in the record that reveals relatively mild impairments."  (AR 26) (internal citations omitted).  An ALJ may discount an opinion that is conclusory, brief, and unsupported by the record as a whole, or by objective medical findings.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).  In support of this finding, the ALJ cited imaging reports from February and May 2018 of Plaintiff's lumbar spine and cervical spine.  (AR 617-19, 631-33).  The February 2018 imaging reports indicated "mild" degenerative changes of the lumbar spine; and "degenerative changes with disc space narrowing at C5-C6 and C6-C7" but "no acute fracture of spondylolisthesis." (AR 631-33).  The May 2018 MRI examination results of the lumbar spine indicated "*mild* lumbar straightening likely positional artifact *without evidence* for early discogenic degenerative change, disc bulge, significant thecal sac deformation, central spinal stenosis or appreciable mass effect on central or exiting nerve roots" and "*mild* left greater than right L5-S1 neural foraminal encroachment secondary to developing facetal arthrosis L4-5, L5-S1"; and the cervical spine MRI results included findings of moderate spondylosis mid to lower cervical spine, *mild* cervical straightening, *mild to moderate* central spinal stenosis, and *mild to moderate* neural foraminal encroachment.  (AR 617-19) (emphasis added).

---

³ Defendant generally notes that, in evaluating Plaintiff's allegations of pain, the ALJ "considered not only the opinion from Dr. Watrous, but also the longitudinal record," including evidence of Plaintiff's "minimal and sporadic treatment" for joint pain. (Doc. No. 19 at 9-10).  However, the Court is not permitted to consider this reasoning as it was not offered by the ALJ as a reason to discount Dr. Watrous' decision. *Bray*, 554 F.3d at 1226 (the Court "review[s] the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking.").

Plaintiff argues that Dr. Watrous "is the only medical expert to interpret these and the other clinical findings into functional terms. The ALJ's substitution of her own lay interpretation of this imaging is legal error." (Doc. 18 at 10); *see Tackett v. Apfel*, 180 F.3d 1094, 1102-03 (9th Cir. 1999) (finding it inappropriate for the ALJ to substitute his or her own medical judgment for that of medical professionals); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) (ALJ "must not succumb to the temptation to play doctor and make [his or her] own independent medical findings"). However, as noted by Defendant, Dr. Watrous could not have relied on the May 2018 MRI results, because "he provided his opinion nearly two months before their existence." (Doc. No. 19 at 11). Moreover, the record indicates that Dr. Watrous later reviewed the MRI results from May 2018 with Plaintiff and noted the results "showed mild degenerative disease," at the same time he noted mild tenderness but no loss of motion in Plaintiff's neck, shoulders, elbows, wrists, hands, lower back, hips, knees or feet. (AR 621, 757). Finally, based on a plain reading of the objective imaging results, it was reasonable for the ALJ to find that the extreme limitations opined by Dr. Watrous were not supported by the largely "mild" objective findings. (AR 617-19, 631-33); *see Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (where evidence is susceptible to more than one interpretation, the ALJ's conclusion must be upheld); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (the ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony). This was a specific and legitimate reason, supported by substantial evidence, for the ALJ to reject the severe limitations opined by Dr. Watrous.

**2. Pauline Bonilla, Psy.D.**

In March 2017, examining psychologist Dr. Pauline Bonilla conducted a clinical interview and mental status examination, and diagnosed Plaintiff with persistent depressive disorder and adjustment disorder with anxiety. (AR 554-59). She opined that Plaintiff's ability to perform simple and repetitive tasks was mildly impaired; her ability to perform detailed and complex tasks was moderately impaired; her ability to accept instructions from supervisors was mildly impaired; her ability to interact with co-workers and the public is moderately impaired; her ability to sustain an ordinary routine without special supervision is mildly impaired; her ability to maintain regular attendance in the workplace is moderately impaired; her ability to complete a normal

1  workday/work week without interruptions from a psychiatric condition is moderately impaired;

2  her ability to deal with stress and changes encountered in the workplace is moderately impaired;

3  and the likelihood of Plaintiff emotionally deteriorating in a work environment is moderate.  (AR

4  558-59).

5        As an initial matter, Plaintiff generally argues that the ALJ "failed to weigh the opinion

6  pursuant to the regulations." (Doc. No. 18 at 12).  This argument is inapposite.  The regulations

7  cited by Plaintiff, requiring the ALJ to consider the supportability and consistency of a medical

8  opinion, apply only to claims filed on or after March 27, 2017.  *See Revisions to Rules Regarding*

9  *the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20

10 C.F.R. § 416.920c.  Plaintiff's claim was filed on December 14, 2016.  (AR 194-200).  Thus, for

11 the purposes of this Court's review, the ALJ was required to give specific and legitimate reasons

12 to reject Dr. Bonilla's contradicted opinion.  *Bayliss,* 427 F.3d at 1216 ("[I]f a treating or

13 examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it

14 by providing specific and legitimate reasons that are supported by substantial evidence.").

15       Here, the ALJ gave Dr. Bonilla's opinion little weight because the "significant

16 limitations" she recommended were not supported by the medical evidence of record.  (AR 27).

17 The consistency of a medical opinion with the record as a whole is a relevant factor in evaluating

18 that medical opinion.  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007); *see also Batson*, 359 F.3d

19 at 1195 (an ALJ may discount an opinion that is conclusory, brief, and unsupported by the record

20 as a whole, or by objective medical findings).  In support of this finding, the ALJ noted Plaintiff

21 has been treated for depression only with medication, she has not sought or received behavioral

22 health treatment, and she has not consistently taken medication for depression since her initial

23 diagnosis." (AR 27).  Plaintiff generally argues the ALJ that "the available records document

24 Plaintiff's mental impairments persisted throughout the relevant period." (Doc. No. 18 at 13).  In

25 support of this argument, she cites three treatment notes from the relevant adjudicatory period that

26 observed depressed mood and affect, agitated attitude, and anxious mood.  (Doc. No. 18 at 12-13;

27 AR 546-47, 672, 674).  However, as noted by Defendant, the records cited by Plaintiff confirm

28 that there was an 18-month gap in the relevant adjudicatory period without any mention of mental

health complaints, which would tend to support the ALJ's finding that the restrictions opined by Dr. Bonilla are inconsistent with the overall medical record.[4]  (Doc. No. 19 at 13).  Moreover, the ALJ explicitly acknowledged the records cited by Plaintiff in support of her finding that, aside from the three cited treatment visits, the record was devoid of evidence that Plaintiff was seeking or receiving mental health treatment.  (AR 27).  "Even when screenings were positive in early 2018, Plaintiff's [primary care provider] did not render any relevant treatment – and Plaintiff did not follow through with her requested referral to be seen by behavioral health."  (Doc. No. 19 at 13).  Thus, it was reasonable for the ALJ to reject Dr. Bonilla's opinion because it was unsupported by the overall medical record, including her lack of specialized mental health treatment.  *See, e.g., Velis v. Berryhill*, No. CV 16–006691–RAO, 2017 WL 3247642, at *2 (C.D. Cal. Jul. 31, 2017) (ALJ properly discounted examining physician's opinion that was in conflict with substantial evidence in the record, which revealed no psychologically-related limitations and no mental health treatment); *Hyde v. Colvin*, No. 1:12–cv–877 BAM, 2013 WL 5278940, at *6 (E.D. Cal. Sept. 18, 2013) (noting that ALJ's finding that claimant lacked any mental health treatment history sufficient reason to reject opinion of examining physician).

As a final matter, Plaintiff correctly notes that where the evidence suggests lack of mental health treatment is part of a claimant's mental health condition, it may be inappropriate to consider a claimant's lack of mental health treatment.  (Doc. No. 18 at 13) (citing *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299-1300 (9th Cir. 1999)); *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996)).  Notwithstanding, when there is no evidence suggesting a failure to seek treatment is attributable to a mental impairment rather than personal preference, it is reasonable for the ALJ to conclude that the level or frequency of treatment is inconsistent with the level of complaints.  *Molina v. Astrue*, 674 F.3d 1101, 1113-14 (9th Cir. 2012).  Here, as noted by Defendant, there is no mental health treatment in the record aside from the prescription

---

[4] Defendant notes that the ALJ properly gave significant weight to Dr. Brady Dalton's reviewing opinion that Plaintiff's mental impairments were not severe. (Doc. No. 19 at 13). However, the Court is not permitted to consider this reasoning that was not offered by the ALJ in the decision as a reason to discount Dr. Bonilla's decision. *Bray*, 554 F.3d at 1226 (the Court "review[s] the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking.").

of mental health medication six months before Plaintiff applied for benefits. (Doc. No. 19 at 13; AR 547). Thus, there is no evidence that any failure to seek treatment was attributable to a mental impairment. Based on the foregoing, it was reasonable for the ALJ to reject Dr. Bonilla's opinion because it was not supported by the overall medical record, including the lack of mental health treatment. *See Burch*, 400 F.3d at 679 (where evidence is susceptible to more than one interpretation, the ALJ's conclusion must be upheld).

**B. Step Two**

At step two of the sequential process, the ALJ must determine whether the claimant suffers from a "severe" impairment, i.e., one that significantly limits her physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(c). To establish a severe impairment, the claimant must first demonstrate that the impairment results from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical or laboratory diagnostic techniques. 20 C.F.R. § 416.921. In other words, the claimant must establish the existence of the physical or mental impairment through objective medical evidence (i.e., signs, laboratory findings, or both) from an acceptable medical source; the medical impairment cannot be established by the claimant's statement of symptoms, a diagnosis, or a medical opinion. 20 C.F.R. § 416.921.

Plaintiff bears the burden to establish the existence of a severe impairment or combination of impairments, which prevent her from performing substantial gainful activity, and that the impairment or combination of impairments lasted for at least twelve continuous months. 20 C.F.R. §§ 404.1505, 404.1512(a); *Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001). However, step two is "a de minimus screening device [used] to dispose of groundless claims." *Smolen*, 80 F.3d at 1290. "Thus, applying our normal standard of review to the requirements of step two, we must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of impairments." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

Here, the ALJ resolved step two in Plaintiff's favor, finding Plaintiff has the following severe impairments: degenerative disc disease of the cervical spine and mild degenerative

11

changes to the lumbar spine. (AR 20). Despite this finding, Plaintiff argues that "Dr. Bonilla's opinion, in combination with the continuing documentation of depression and anxiety within Plaintiff's treatment records, contradicts the ALJ's conclusion that Plaintiff's impairments are not severe." (Doc. No. 18 at 13-14). However, as discussed in detail above, the ALJ properly discounted Dr. Bonilla's opinion. Moreover, at step two, the ALJ specifically "considered the four broad areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments," and found Plaintiff had mild limitation in understanding, remembering, or applying information; no limitation in interacting with others; mild limitation in concentrating, persisting, or maintaining pace; and no limitation in adapting and managing oneself. (AR 21). Thus, the ALJ concluded that Plaintiff's medically determinable mental impairment causes no more than mild limitation in any of the functional areas, and is therefore non-severe. (AR 22). In further support of the step two finding, the ALJ gave significant weight to Dr. Brady Dalton's reviewing opinion that Plaintiff's claimed mental health impairments were non-severe, which included a specific finding that the limitations assessed by Dr. Bonilla "appear[ed] overly restrictive" in relation to the medical evidence of record which was "void of any significant psychiatric treatment." (AR 123).

Aside from the discounting of Dr. Bonilla's opinion, Plaintiff fails to challenge any of the ALJ's finding at step two with specificity; nor does she identify how those alleged impairments, specifically, resulted in limitations beyond those in the assessed RFC. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (court may decline to address issue not raised with specificity in Plaintiff's briefing); *see also Molina*, 674 F.3d at 1115 (error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination). As the record stands, the Court finds the ALJ relied on substantial evidence to find Plaintiff's alleged impairments were not severe at step two.

## VIII. CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ's. *Tackett*, 180 F.3d at 1098. To the contrary, a reviewing court must defer to an ALJ's assessment as long as it is supported by substantial evidence. 42 U.S.C. § 405(g). As discussed in detail

above, the ALJ properly considered the medical opinion evidence and did not err at step two. After review, the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

Accordingly, it is **ORDERED**:

1. The decision of the Commissioner of Social Security is AFFIRMED for the reasons set forth above.
2. The Clerk is directed to enter judgment in favor of the Commissioner of Social Security, terminate any pending motions/deadlines, and close this case.

Dated:   January 14, 2022

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE